

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN, TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

**FAGAN DICKSON**
FIRST ASSISTANT

January 5, 1949

Hon. C. H. Robinson, President
State Board of Chiropody Examiners
826 Fair Building
Fort Worth, Texas

Opinion No. V-758.

Re: Reinstatement of Chir-
opody licentiates whose
licenses have been sus-
pended or revoked.

Dear Sir:

We refer to your letter in which you submit:

1. May the Board require licentiates whose licenses have been suspended or revoked for non-payment of an annual renewal fee to pass the regular examination as provided in Article 4569 V. C. S., including payment of the $55.00 examination fee?

2. May the Board permit former licentiates who do not possess the educational qualifications prescribed by Article 4570, to be re-examined after their licenses have been suspended or revoked?

3. May the Board require of a former licentiate whose license has been suspended or revoked under the provisions of Article 4571, to pass the regular examination, before reinstating or issuing a new license, who may qualify by reasons of educational attainments provided for in Article 4570, and not require of another former licentiate whose license has been suspended or revoked under provisions of Article 4571, who may not qualify by reasons of not having attained the education provided for in Article 4570?

4. Does the "discretion" of the Board, as provided in the Act, permit this board to reinstate one former licentiate and refuse to reinstate other former licentiates? In other words, would such reinstatement and refusal of reinstatement, based upon the Board's knowledge of the personal and professional histories of the applicants, be held to be exercising "discretion," or would it be construed to be "discrimination?"

5.   May former licentiates be reinstated by fulfilling the only requirement of paying the current renewal fee, or must all renewal fees in arrears be paid, plus the current renewal fee?

6.   May former licentiates be reinstated by payment of the current renewal fee, or must all fees in arrears be paid?

We refer to the following laws which are pertinent to your inquiry:

Article 4569, V. C. S. provides for the examination and re-examination of applicants for license to practice chiropody in this State. Each such applicant is required to pay an examination fee of $35.00. It is also therein provided that "Any applicant failing in the examination and being refused a license shall be entitled to a re-examination at the next regular session of said Board within one year. Any applicant failing on re-examination shall be required to pay an additional fee and shall be required to be re-examined in all subjects."   (Emphasis added throughout)

Article 4570 prescribes the qualifications of applicants for such licenses.  It reads:

"All applicants for license to practice chiropody in this State, not otherwise licensed under the provisions of law, shall present satisfactory evidence to the State Board of Chiropody Examiners that such applicants have attained the age of twenty-one (21) years, are of good moral character and are free of all contagious and communicable diseases, and furnish a certified certificate of health to that effect, and are citizens of the United States of America and who are graduates of at least a sixteen (16) unit high school, whose credits are acceptable without condition for matriculation at the State University of the State in which the applicant's high school graduation was attained. The applicant shall present satisfactory evidence of graduation from a bona fide reputable school of chiropody in the form of a diploma which has conferred the degree of Doctor of Surgical Chiropody, to the State Board of Chiropody

Examiners. Such chiropody schools may be
considered reputable, within the meaning
of this Act, whose entrance requirements
and course of instruction are as high as
those adopted by the University of Texas,
and whose course of instruction shall em-
brace at least four (4) terms of at least
eight (8) months each, and which meets
the requirements of the State Board of
Chiropody Examiners. Provided, however,
the Board may, in its discretion, accept
applicants from chiropody schools whose
course of instruction embraces at least
three (3) terms of at least eight (8)
months each; and provides for one term
of eight (8) months instruction in a rec-
ognized college of liberal arts or sci-
ences shall be approved by this Board."

Article 4571 requires each such licensed
chiropodist to pay an annual renewal fee of $10.00
and that:

". . . When a chiropodist shall fail to
pay his annual renewal fee by March 1st,
it shall be the duty of the Board of
Chiropody Examiners to notify such chir-
opodist at his last known address, by
mail, that said annual renewal fee is
due and unpaid. Thirty (30) days after
the date of mailing said notice, it
shall be the duty of the Board under
this Act to declare the license suspend-
ed or revoked for nonpayment of the an-
nual renewal fee . . . After the Board
has declared a license suspended or re-
voked, as provided for in this Act, the
Board may thereafter in its discretion
refuse to reinstate such license or is-
sue a new license until such chiropodist,
whose license has been declared suspend-
ed or revoked for nonpayment of annual
renewal fee, has passed a regular exam-
ination for license, as provided for by
this Act. . . ."

Authority to revoke such licenses is given
in Article 4573, as follows:

"The board may, after due hearing, refuse to grant or renew and may revoke any license issued under the provisions of this law to a person, otherwise qualified, who obtained such license by fraudulent representation or dishonesty in taking an examination; or who makes use of untruthful and improbable statements to patients or in his advertising, or for habitual intoxication, or for unprofessional and immoral conduct; or who gives away or sells drugs or alcohol for other than legitimate purposes in his practice; or who may be convicted of amputating the human foot or toe or of using an anesthetic other than local. When a license has been granted it shall not be revoked or the renewal thereof refused without at least fifteen days notice to the licensee, who shall be entitled to a hearing by the board, and shall have the right to be represented by counsel. At least ten days prior to the date of such hearing the licensee shall be notified of the filing of the charges and of the nature thereof. Any person licensed to practice chiropody in this State whose license shall be cancelled by such board may, within thirty days after the cancellation thereof, and not thereafter, have his right of action for reinstatement against such board in the district court of Travis county. If the person whose license has been canceled by the board shall, within ten days after receiving information of such cancellation, give written notice to the secretary of the board of his intention to file such suit, the action of the board in cancelling the license of such person shall be suspended for a period of thirty days, but unless such suit shall be filed within said time, the action of the board shall be final. If suit shall be filed against the board to reinstate such license within said time, the action of the board shall remain suspended until the validity of the license in question shall be determined by the court. In such suit the burden shall be upon the plaintiff to show cause for reinstatement of his license. The board may, at its discretion,

in case license has been revoked or the
renewal thereof refused, reissue such
license at the expiration of six months
from the time such license was revoked."

We are of the opinion that Articles 4568-
4573, V. C. S., make plain the legislative intent that
the provisions thereof pertaining to the authority of
the State Board of Chiropody Examiners to reinstate
licenses of chiropodists which have been suspended or
revoked for nonpayment of renewal fees, is discretion-
ary, by reason of which we hold that:

1. The State Board of Chiropody Examiners
may require chiropody licentiates whose licenses have
been suspended or revoked for non-payment of annual
renewal fees, as required by Article 4571, V. C. S., to
pass the regular examination as provided in Article
4569, including payment of the $35.00 examination fee,
but may, in its discretion, reinstate such licenses
without requiring such re-examination.

2. Where regular examinations are required
by the Board each should stand as an original applica-
tion in compliance with Articles 4569 and 4570, includ-
ing requirements as to education of the applicant.

3. The Board may in its discretion, reinstate
former chiropody licentiates and refuse to reinstate
others if just cause exists for such refusal. Failure
of the applicant to meet the requirements of Article 4570,
V. C. S. will justify such refusal.

4. Former licentiates who are reinstated with-
out regular examinations should be required to pay all
renewal fees for which they are in arrears; all who are
required to be re-examined and pass the regular examina-
tion may only be required to pay annual renewal fees
commencing with their reinstatement.

## SUMMARY

The State Board of Chiropody Examiners
may require chiropody licentiates whose li-
censes have been suspended or revoked for
non-payment of annual renewal fees, as re-
quired by Article 4571, V. C. S., to pass
the regular examination as provided in Arti-
cle 4569, including the payment of the $35.00

examination fee.  Where re-examination is required by the board, the applicant should meet the requirements of Article 4570.  The board may in its discretion refuse to reinstate former licentiates for just cause.  Former licentiates who are reinstated without re-examination should pay all renewal fees in arrears; those who are re-examined and pass should pay only the current renewal fee.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By W. T. Williams
Assistant

WTW:wb

APPROVED:

FIRST ASSISTANT
ATTORNEY GENERAL